# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ENCORE WIRE CORPORATION, | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No.  4:23-cv-00821 |
| | § | Judge Mazzant |
| SOUTHWIRE COMPANY, LLC, | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss, or in the Alternative, Stay Pending Mediation (Dkt. #23). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

Plaintiff Encore Wire Corporation ("Encore Wire") and defendant Southwire Company, LLC ("Southwire") are both in the wire manufacturing business. On August 11, 2023, counsel for Southwire sent a letter to counsel for Encore Wire "concerning Southwire's families of patents that appear to be relevant to [Encore Wire's] products" (Dkt. #1, Exhibit 2 at p. 2). The letter detailed certain of Encore Wire's products that "may utilize the same technology as that claimed in" at least some claims of some of Southwire's patents (Dkt. #1, Exhibit 2 at pp. 2–3). In the letter, Southwire identifies specific claims as to some patents, as to some other patents, but it does not identify specific claims.

Each section of Southwire's opening letter concludes with a paragraph that states:

Encore [Wire] should immediately review these patents and take any action
necessary to ensure that Encore [Wire] or any Encore [Wire] customer [becomes

> licensed or][1] does not infringe (either literally or under the Doctrine of Equivalents)
> any of the claims of these patents through the manufacture, use, offer for sale, sale
> or importation of Encore [Wire] products, including [the identified Encore Wire
> product]. To the extent that Encore [Wire] determines the subject matter claimed
> in [the identified Southwire patent(s)] is practiced when using an Encore [Wire]
> product, Encore [Wire] should immediately take steps to remedy that situation and
> to inform Southwire of any infringing use or sales, as well as the amount of such
> sales.

(*e.g.*, Dkt. #1, Exhibit 2 at p. 4). The letter itself concludes with Southwire's indication it was "willing to enter in a suitable confidentiality agreement to further any discussions and potential licensing" (Dkt. #1, Exhibit 2 at p. 7).

On August 21, 2023, counsel for Encore Wire wrote a letter in response. The response letter stated that Southwire's initial letter "fail[ed] to provide any detail of how or why [the identified patents] may be of interest to Encore Wire" (Dkt. #1, Exhibit 2 at p. 15). It notes that for some of the patents, no allegedly relevant claims were identified, and for patents "where a claim [was] identified, there [were] no specifics or claim chart provided that are directed towards the accused Encore [Wire] products" (Dkt. #1, Exhibit 2 at p. 15). And without that information, Encore Wire claimed, it was "not practical for [Encore Wire] to be in a position to conduct a careful review of the allegations" and therefore did not provide notice to Encore Wire under 35 U.S.C. §§ 1 *et seq.* (Dkt. #1, Exhibit 2 at pp. 15–16).

On September 7, 2023, counsel for Southwire responded, stating that Southwire was "disappointed that [Encore Wire's] response letter did not address [Southwire's] offer to enter into a suitable confidentiality agreement to further any discussions and potential licensing" (Dkt. #1, Exhibit 2 at p. 17). Southwire also challenged Encore Wire's assertion that its opening letter did not provide Encore Wire with notice, since the opening letter "made a specific charge of

---

[1] This "becomes licensed or" bracketed language only appears on Dkt. #1, Exhibit 2 at p. 7.

infringement by a specific product with respect to each of [Southwire's] patent families" (Dkt. #1, Exhibit 2 at p. 18). Southwire requested Encore Wire respond to its letter by September 15, 2023.

On September 14, 2023, one day before its deadline to respond to Southwire's second letter and twenty four days after Southwire's opening letter, Encore Wire filed this lawsuit for declaratory judgment (Dkt. #1). In the Complaint, Encore Wire states that "Southwire's actions have created a real, immediate, and justiciable dispute between Encore Wire and Southwire as to whether Encore Wire products infringe" the patents identified in Southwire's letters (Dkt. #1 ¶ 2). To support this claim, Encore wire cites "Southwire's recent threatening actions and the history of litigation between the parties" (Dkt. #1 ¶ 2). With regard to "recent threatening actions," Encore Wire quotes language from Southwire's September 7, 2023 letter:

> Southwire made a specific charge of infringement by a specific product with respect to each of these patent families. That charge included identification of the Southwire patents (including identification of specific claims for many of the patents), identification of the specific Encore [Wire] products at issue, and a proposal to abate the infringement (either by remedying infringement or the possibility of a license)

(Dkt. #1 ¶¶ 3, 24 (quoting Dkt. #1, Exhibit 2 at p. 17)). With regard to a "history of litigation between the parties," Encore Wire cites to four lawsuits filed by Southwire against Encore Wire in the 2009-2011 span (Dkt. #1 ¶ 5). Encore Wire claims Southwire filed two of those lawsuits while the other two lawsuits were still pending (Dkt. #1 ¶ 5). Encore Wire also states that the prior cases "involved patents from a patent family that is at issue in this action" (Dkt. #1 ¶ 6).

Since the time that Encore Wire filed the Complaint, the parties appear to be in active discussions to attempt to resolve the dispute (Dkt. #23 at p. 6 ("Over the intervening six months, Southwire made multiple attempts to resolve (or at least narrow) the pending litigation"); Dkt. #30 at p. 7 ("Since serving the Complaint and after entry of a protective order, Encore Wire has

provided information to Southwire in good faith supporting its defenses to the patents at issue")).

On February 23, 2024, the parties jointly moved for protective order, and the Court entered a

protective order on February 27, 2024 (Dkt. #15 (parties' joint motion); Dkt. #17 (Court's entry

of protective order)).  In March 2024, Encore Wire and Southwire exchanged information and

photographs regarding Encore Wire's positions on non-infringement, invalidity, and

unenforceability (Dkt. #30 at p. 7).

On April 1, 2024, Southwire filed its motion to dismiss or a more definite statement, or in

the alternative, a stay pending mediation (Dkt. #23).  Southwire moves to dismiss under Rule

12(b)(6) or for a more definite statement under Rule 12(e) (*see* Dkt. #23 at p. 8).  Alternatively,

Southwire moves to stay the case for 60 days pending mediation between the parties (Dkt. #23 at

p. 14).  On May 7, 2024, Encore Wire responded (Dkt. #30).  On May 21, 2024, Southwire replied

(Dkt. #34).  On June 5, 2024, Southwire filed its sur-reply (Dkt. #37).

## LEGAL STANDARD

### I.      Rule 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a

"short and plain statement . . . showing that the pleader is entitled to relief."  FED. R. CIV. P.

8(a)(2).  Each claim must include enough factual allegations "to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint

fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering

a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the

plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City*

*of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  The Court must then determine whether the complaint states a claim for relief that is plausible on its face.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

5

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.   Rule 12(e)

Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement of the pleadings when the pleadings are "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e).  "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement . . . before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  Motions for a more definite statement are generally disfavored because "in view of the great liberality of Federal Rule of Civil Procedure 8 . . . it is clearly the policy of the Rules that Rule 12(e) should not be used to . . . require a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Source Data Acquisition, LP v. Talbot Grp., Inc.*, 4:07-cv-294, 2008 WL 678645, at *2 (E.D. Tex. Mar. 11, 2008) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)).  In addition, "when a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Hoffman v. Cemex, Inc.*, No. H-09-2144, 2009 WL 4825224, at *3 (S.D. Tex. Dec. 8, 2009) (citing *Arista*

6

*Records LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006)). "Nevertheless, parties may rely on Rule 12(e) as a mechanism to enforce the minimum requirements of notice pleading." *Id.*

## III.   Declaratory Judgment Jurisdiction

"A court has subject matter jurisdiction under the Declaratory Judgment Act only if 'the facts alleged, under all the circumstances, show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). "In patent cases, declaratory judgment jurisdiction exists 'where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." *Id.*

"[D]eclaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Id.* at 1364. A declaratory judgment plaintiff "must show that the dispute is 'definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Hewlett-Packard*, 587 F.3d at 1362 (quoting *MedImmune*, 549 U.S. at 127). "The test for declaratory judgment jurisdiction in patent cases, however stated, is *objective*." *Id.* at 1363 (cleaned up). "Thus, conduct that can be reasonably

inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction." *Id.*

## ANALYSIS

### I.      Rule 12 Motions

Southwire moves for dismissal under Rule 12(b)(6) or for a more definite statement under Rule 12(e). After reviewing the current complaint, and the arguments contained in the briefing, the Court finds that Encore Wire has stated plausible claims for relief. Therefore the motion to dismiss is denied, and no more definite statement is necessary.

### II.     Stay Pending Mediation

Southwire alternatively moves the stay the case for sixty days pending mediation. The Court does not find such relief necessary. Southwire wishes to try to "resolve (or narrow) this lawsuit through mediation" and states that "[i]f legitimate disputes coalesce during mediation, Southwire will file counterclaims of infringement and request the Court realign the parties so it is both the true (as patent owner) and actual plaintiff in this lawsuit" (Dkt. #23 at p. 5).

The Court interprets this motion as a request for the Court to temporarily decline to exercise its jurisdiction over the case. At this time, the Court does not find such relief appropriate and it will not exercise its discretion in that way. Under the totality of the circumstances, it appears Encore Wire and Southwire have a "substantial controversy." The parties have been in discussions regarding Southwire's patents since their initial correspondence and through the pendency of this lawsuit (*see* Dkt. #23 at p. 6 (referencing Southwire's attempts to resolve this lawsuit "[o]ver the intervening six months")). And Encore Wire has provided Southwire with its

current positions on non-infringement, invalidity, and unenforceability, and Southwire has expressed disagreement with those positions (Dkt. #30 at p. 7).

Accordingly, the Court denies Southwire's request to *stay* the case pending mediation. But the Court, recognizing the relatively short time frame between Southwire's opening letter and Encore Wire's Complaint, will, after Southwire answers, enter a mediation deadline it deems appropriate in this case.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss, or in the Alternative, Stay Pending Mediation (Dkt. #23) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 17th day of June, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE